UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PLEADRO JERMAINE SCOTT,

     Plaintiff,

v.                                              Case No. 3:19cv4746-LC-HTC

C. CROSBY, et al.,

     Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

     Plaintiff, Pleadro Scott, proceeding *pro se* and *in forma pauperis*, filed this action under 28 U.S.C. § 1983 on November 14, 2019. ECF Doc. 1. On January 15, 2020, the Court conducted an initial screening of the complaint and entered an order allowing Plaintiff an opportunity to amend the complaint to state a cause of action against the Defendants. ECF Doc. 9. Plaintiff filed an amended complaint on February 21, 2020. ECF Doc. 11. The undersigned has screened the amended complaint and for the reasons set forth below, respectfully recommends that Plaintiff's failure to protect claims against all Defendants be dismissed; that Defendant Captain McCabe be terminated as a defendant; and that the due process claim against Defendant Crosby be dismissed under 28 U.S.C. § 1915A(b)(1) and

§ 1915(e)(2)(B)(ii) for Plaintiff's failure to state a claim on which relief may be granted.[1]

## I.    BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at South Florida Reception Center ("SFRC").  Plaintiff sues six (6) current or former employees of Century Correctional Institution ("CCI"): Captain McCabe, Sergeant Crosby, Officer King, and three (3) John Doe officers. The amended complaint sets forth the factual allegations which follow, the truth of which is accepted for purposes of this order.[2]

On April 12, 2019, while at CCI, Plaintiff filed "a grievance about illicit activity that was being conducted by CCI staff."  ECF Doc. 11 at 8.  "Later that morning," while Crosby and two John Doe officers escorted Plaintiff to a new dorm, Plaintiff "verbally attempted to notify" Crosby, King, and three John Doe officers "that he feared for his safety."  *Id.*  "Plaintiff was not allowed to elaborate on the subject" and Crosby told him he was "going to fear for his safety because he's going to go in that cell."  *Id.*  When he arrived at the "cell front," Plaintiff "shouted out loud for the audio and video," his name, and that he "fear[ed] for his safety and [was]

---

[1] The undersigned finds that Plaintiff's excessive force and retaliation claims against Defendants Crosby, King and the three John Doe Officers are sufficient to be served and will separately order Plaintiff to provide service copies.

[2] To assist the reader, spelling or grammatical errors have been revised in the quoted language.

requesting protective management." *Id.* Crosby, King, and the three John Doe officers "ignored Plaintiff's request for protection management and refused to allow Plaintiff to elaborate any further on the subject." *Id.* at 9.

"Without warning," Plaintiff was "physically assaulted . . . while Plaintiff was not combative, not a threat, not disorderly, not resisting, and having not violated any rules." ECF Doc. 11 at 9. Crosby, King, and the three John Doe officers threw "Plaintiff to the floor while he remained in handcuffs causing his body, head, face to hit the floor with significant impact." *Id.* While he was on the floor, "Plaintiff was punched in the face by at least one officer, and either punched or elbowed applied with the body weight of other officers to Plaintiff torso." *Id.* "Plaintiff was also sprayed with chemical agent." *Id.* These attacks were allegedly carried out with "malicious and sadistic intent to cause harm and/or mayhem and deter Plaintiff from requesting Protection and filing grievance pursuing pending civil litigation." *Id.*

Plaintiff claims he sustained multiple injuries from the attack, including: "malaise, body sores, pain, burning, tearing and involuntary closing of the eyes, nasal discharge, sneezing disorientation and the sensation of respiratory distress and skin irritation, bruising and abrasion to his knees, chipped and/or broken teeth, mental and emotional distress, physical fright." *Id.* at 9-10.

Plaintiff's fear "of being placed into the cell with other inmates" was based on: "previous threats by c/o Burch, and gang members, an attempted assault by Inmate Cruze (known gang member) and the previous assault and battery by Sgt. C.T. McGhee, Cpt. Igo and the above staff and other staff trying to force Plaintiff to fight with other inmates for their personal entertainment, and the releasing of confidential information in corrections files with the intent to solicit attacks on [Plaintiff's] person" and "a previous assault by Sgt. Cox." ECF Doc. 11 at 10.

Later, Captain McCabe arrived and Plaintiff "tried to explain that he feared for his life and safety and that officials was trying to force him to fight with other inmates for their personal entertainment but to no avail." *Id.* at 10. McCabe "forced" Plaintiff into a shared cell with "Inmate Maxwell" "with reckless disregard for established written policy that requires upon an inmate request for protection he is to be placed into A/C confinement pending a protective management review by the ICT [institutional classification team]." *Id.* Plaintiff claims McCabe "had the authority to implement this process and/or to utilize other solutions within his means to rectify the situation" but he "consciously abandoned his ministerial duties." *Id.* at 11.

On April 16, 2019, Plaintiff was handed a disciplinary report, which was "based on a false allegation." *Id.* The "disciplinary report was falsely written by Sgt. C.D. Crosby . . . with regards to the infraction resulting in the unnecessary use

of excessive force on Plaintiff personal security and bodily liberty for which" Crosby "consciously attempted to cover up by omitting essential and critical facts about the charged infraction from the disciplinary report." *Id.* Plaintiff alleges Crosby "abandoned tangible material evidence (audio and video surveillance footage) that captured the unlawful unconstitutional acts implemented by him, his subordinates etc." with "malicious and sadistic intent that the evidence . . . be destroyed as an official cover up." *Id.*

On April 17, 2019, Plaintiff was transferred to Liberty Correctional Institution ("LCI") and arrived on April 23, 2019, "prior to a disciplinary hearing on the charging disciplinary report." ECF Doc. 11 at 12. Upon Plaintiff's arrival at LCI, he was "placed in confinement pending the completion of his previous disciplinary confinement sentence." *Id.* During confinement, Plaintiff was "deprived of liberty as afforded to inmates similarly situated and as afforded to inmates in the general inmate population, subjecting plaintiff to an atypical and significant hardship." *Id.* On April 30, 2019, Plaintiff was told that the disciplinary report would be "postponed to a later date for further investigation." *Id.* On May 3, 2019, Plaintiff was released from disciplinary confinement back to the general population and was "latter informed that the D.R. was rejected, dismissed and will not be processed." *Id.* Therefore, Plaintiff never received "a protective management review by the ICT

Team . . . at Century C.I. and/or Liberty C.I. in accordance with established policy for inmates that request for protective management." *Id.*

"As a direct result of" McCabe, Crosby, and the John Doe Officers' failure "to complete their ministerial duties under the department of corrections own rules," they "deprived classification of sufficient knowledge of facts to appropriately house and reassign Plaintiff to housing at a facility to ensure his safety." *Id.* at 13. Plaintiff was housed at LCI "in general population where he was assaulted by inmate Cruz Gang brothers that Plaintiff was attempted to notify staff at Century C.I. about." *Id.* Thus, "the acts and omissions at Century C.I. was the chain of causation of the assault and/or battery at Liberty C.I."

As relief, Plaintiff seeks "a declaratory judgment,[3] unspecified presumed, compensatory punitive and nominal damages, and separately unspecified damages for the intentional infliction of emotional distress, and reimbursement for the cost of litigation and expense." *Id.* at 14.

## II.    STANDARD OF REVIEW UNDER 28 U.S.C. §§ 1915A AND 1915(e)

Because Plaintiff is a prisoner and is also proceeding *pro se*, the Court is required to review his complaint, identify cognizable claims and dismiss the

---

[3] Plaintiff's claim for declaratory relief is moot because he is no longer incarcerated at CCI. *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011).

complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (applying the same standard to *in forma pauperis* proceedings). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). Also, the Court must read Plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a violation of federal law or the Constitution; and (2) that the alleged violation was committed by a person acting under the color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (per curiam); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

## III.    DISCUSSION

### A.    Failure To Protect Claim

Reading Plaintiff's amended complaint liberally, it appears that Plaintiff may be trying to assert an Eighth Amendment failure to protect claim against all Defendants. Specifically in regards to Defendant McCabe, Plaintiff claims McCabe violated his rights under the Eighth, and Fourteenth Amendments by putting him in

a cell with Maxwell, "the same inmate that Plaintiff had requested protective management from without attempting to locate a separate cell nearby."[4]  *Id.*  As to the other Defendants, Plaintiff's allegations appear to be more general and arise out of his placement in the general population while at LCI.  *See* ECF Doc. 11, ¶s 30-33.

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations and internal quotation marks omitted).  Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Farmer*, 511 U.S. at 833.  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Farmer,* 511 U.S. at 834).  A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably

---

[4] Although Plaintiff identifies both the Eighth and Fourteenth Amendments, because Plaintiff is serving a sentence under a judgment of conviction (versus being a pretrial detainee), the Eighth rather than the Fourteenth Amendment applies to his failure to protect claim.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."); *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1318 n. 13 (11th Cir. 2005) ("The Eighth Amendment applies to convicted inmates.").

to the risk." *Caldwell*, 748 F.3d at 1099 (emphasis omitted) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (internal quotation marks omitted).

To prevail on a failure-to-protect claim under § 1983, a plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015). A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (emphasis omitted) (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (internal quotation marks omitted).    Additionally, the defendant's response, even if inadequate, must be more than gross negligence. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013); *see also, Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983").

Moreover, for a defendant to have knowledge of a risk of harm, "[t]here must be a 'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." *Id.* (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).    Specifically, there must be factual allegations showing that "the prison official [was] aware of specific facts from which

an inference could be drawn that a substantial risk of serious harm exists." *Carter*, 352 F.3d at 1349.

Plaintiff's allegations against McCabe and the other Defendants, even if assumed to be true and read liberally, do not state a claim for failure to protect for several reasons.  First, as stated in the Court's January 15, 2020 Order, Plaintiff fails to allege facts sufficient to show Defendants knew that a substantial risk of serious harm existed if Plaintiff was placed in a cell with Maxwell.  Indeed, Plaintiff makes no allegation with regard to Maxwell that would alert Defendants to the possibility that Maxwell would be a danger to Plaintiff.  Although Plaintiff alleges he feared for his life, the bases of such fear, as alleged in the complaint, have nothing to do with being housed with Maxwell.  Instead, his fear was based on assaults by others, including officers, and the guards "trying to force [Plaintiff] to fight with other inmates."  ECF Doc. 11 at 10.

Plaintiff's allegations of generalized fear alone are not sufficient to state a failure to protect claim against Defendants.  *See Carter*, 352 F.3d at 1349 ("before Defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] general problematic nature"); *Gooden v. Morman*, 524 F. App'x 593, 596 (11th Cir. 2013) (affirming *sua sponte* dismissal of failure to protect claim "absent any allegations that the officers had 'subjective knowledge' that the plaintiff could be seriously harmed and merely putting him

handcuffed in a cell with other inmates who were known to be 'aggravated' and 'in a hostile mood' did not constitute such knowledge"). Here, there is no allegation that any problem existed with Maxwell or that Maxwell ever harmed Plaintiff.

Second, even if Plaintiff told Defendants any information from which they could have actually perceived a risk to Plaintiff from being placed in a cell with Maxwell, there are no allegations that Plaintiff was injured by Maxwell. Instead, the only alleged "assault" that occurred was at LCI *after* Plaintiff was transferred from CCI.[5]  ECF Doc. 11 at 13. Protective management decisions are made by the ICT at each facility, in conjunction with the state classification office ("SCO"). *Williams v. Swain*, No. 3:16-CV-45-J-34JRK, 2019 WL 1117094, at *13 (M.D. Fla. Mar. 11, 2019); *see* Fla. Admin. Code rules 33-601.209(3), 33-602.221(2)(d). Defendants are, or were, employees of CCI, not LCI (where Plaintiff was assaulted). Thus, they cannot be responsible for not placing Plaintiff in, or recommending him for, protective management while he was at LCI. For example, Plaintiff's claim against McCabe for failing to schedule a review with the ICT team at CCI fails because McCabe's failure to schedule a review with the ICT team, even if proven, would not

---

[5] While Plaintiff alleges he was assaulted at LCI, he does not allege that he sustained any injuries from the assault.

have resulted in Plaintiff's failure to get an ICT review or be recommended for protective management at LCI.[6]

## B.    Other Claims Against McCabe

Plaintiff also claims McCabe violated his Fourth, Eighth, and Fourteenth Amendment rights, and various Florida statutes, by his failure to follow FDOC policy, which "requires the scheduling of an review by the ICT team," "resulting in Plaintiff being housed at Liberty C.I. resulting in Plaintiff being assaulted, battered, and the loss and/or theft of his personal property." *Id.* at 15-16.  Such a claim, however, also cannot survive dismissal because FDOC policies do not create a liberty interest.  *See Mathews v. Moss*, 506 F. App'x 981, 984, n. 3 (11th Cir. 2013); *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (holding, "a violation of a prison regulation without more does not state a constitutional violation") (citing *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000)).

Accordingly, the undersigned recommends Plaintiff's Eighth Amendment failure to protect claim against all Defendants be dismissed.  Additionally, since the only claims against McCabe are for failure to protect and failure to follow FDOC

---

[6] In conclusory fashion, Plaintiff states in paragraph 34 of his amended complaint that officials at LCI destroyed evidence as "an official coverup."  Plaintiff, however, has not named any defendants who work at LCI, and such claims cannot be joined in this action unless they arise out of the same transaction or occurrence or have common questions of law or fact. Fed. R. Civ. P. 20(a)(1); *see also,* NDFL Po Se 14.1 (Rev. 1/2020) Instructions Civil Rights Complaint Prisoner.

policies, the undersigned respectfully recommends that Defendant McCabe be terminated as a defendant in this case.

### C.    Due Process Claim Against Crosby

Plaintiff claims the "disciplinary confinement caused by Sgt. C.D. Crosby fabrication of evidence (disciplinary report) to find probable cause" violates his rights under the Fourth and Fourteenth Amendments and "Fla. Stat. 817.49." ECF Doc. 11 at 16. As an initial matter, Plaintiff admits the disciplinary report that Plaintiff complains of was dismissed. Thus, no disciplinary action was taken against Plaintiff. Because the report was dismissed and no action taken, Plaintiff is not entitled to due process. *See Searcy v. Singletary*, 894 F.Supp. 1565, 1572 (M.D. Fla. 1995) (holding plaintiff has no right to notice or a hearing because disciplinary report was dismissed). Nonetheless, Plaintiff complains that while the disciplinary report was pending, he was placed in confinement, which resulted in a violation of his due process rights.

The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. Plaintiff does not allege that the disciplinary report resulted in a deprivation of property or life. With regard to liberty, there are two circumstances in which a prisoner can be deprived of his liberty such that due process is required. The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the

sentence imposed by the court. *See, e.g., Vitek v. Jones,* 445 U.S. 480, 492–93 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (finding liberty interest in deprivation of yard time).

Neither of those circumstances exists based on the facts alleged. First, Plaintiff had no liberty interest in being released from confinement within a definite period of time. *See Searcy*, 894 F. Supp. at 1572 (finding plaintiff had no liberty interest in being released from confinement within a definite period of time, other than the shortest time possible after the report was dismissed). Second, Plaintiff's allegation that while in confinement, he was "deprived of liberty as afforded to inmates similarly situated and as afforded to inmates in the general inmate population," is, at best, a conclusory statement and provides no facts regarding what benefits he was deprived of such as is necessary for the Court to determine whether he has been deprived of his liberty. *See Spaulding v. Bass*, No. 4:11CV605-MP/CAS, 2016 WL 4750075, at *9 (N.D. Fla. Aug. 10, 2016) (Plaintiff "provided

no evidence showing that his segregation was a 'significant deprivation' from the presumed benefit of being housed in general population"), *report and recommendation adopted*, No. 4:11-CV-00605-MP-CAS, 2016 WL 4766480 (N.D. Fla. Sept. 9, 2016).

Moreover, Plaintiff alleges that the disciplinary report written by Crosby was on April 12, 2019. Plaintiff further states he was transferred to LCI five (5) days later, on April 17, and arrived there on April 23. It was upon his arrival at LCI that Plaintiff was placed in confinement, where he stayed until May 3, 2019. Thus, even assuming Crosby can be held responsible for Plaintiff's confinement at LCI, Plaintiff was in confinement for, at most, ten (10) days. Such a period of confinement, without any additional facts, does not constitute an "atypical or significant hardship." *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months of confinement in administrative segregation was not a deprivation of a constitutionally protected liberty interest); *Perez v. Humphries*, No. 1:11-CV-180-MP-GRJ, 2011 WL 6960817, at *3 (N.D. Fla. Dec. 6, 2011) (Plaintiff's placement in disciplinary confinement for 60 days is not sufficient to trigger constitutional due process protections."), *report and recommendation adopted sub nom. Perez v. Humprhies*, No. 1:11CV180-SPM/GRJ, 2012 WL 32566 (N.D. Fla. Jan. 6, 2012). Accordingly, Plaintiff has failed to assert facts sufficient to show he has been deprived of a liberty interest.

Regardless, even assuming Plaintiff had stated (or could state) facts sufficient to show that the disciplinary report resulted in a deprivation of his liberty, Plaintiff has asserted no facts to show that was denied due process. To the contrary, Plaintiff admits he received notice of the disciplinary report and that a hearing had been scheduled. The hearing did not proceed because the report was dismissed. Thus, it appears Plaintiff received sufficient due process. *Searcy*, 894 F. Supp. at 1572 (an inmate must "merely receive some notice of the charge against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative segregation") (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

Finally, Plaintiff's allegation that Crosby falsified information in the report, alone, is insufficient to support a due process claim. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (holding that false or unfounded charges do not deny due process as long as prison officials go through the required procedural motions); *Johnson v. VanBuren*, No. 5:07CV102RS, 2007 WL 2225818, at *3 (N.D. Fla. Aug. 1, 2007).

## IV.    CONCLUSION

For the reasons set forth above, the undersigned recommends Plaintiff's claim for failure to protect against all Defendants be dismissed; Plaintiff's due process claim against Crosby be dismissed; and McCabe be terminated as a defendant.

Additionally, although Plaintiff also alleges, generally, that Defendants have violated his Fourth Amendment rights, that claim should be dismissed because Plaintiff has not set forth any facts supporting a Fourth Amendment claim.[7]  Also, since Plaintiff has already been given an opportunity to amend his complaint, the undersigned finds that an additional opportunity to do so would be futile.

As set forth above, the Court will enter a separate order allowing service of Plaintiff's excessive force and retaliation claims against Crosby, King, and the John Doe officers.

Accordingly, it is respectfully RECOMMENDED:

1.    That Plaintiff's claims for failure to protect under the Eighth Amendment (and Fourteenth Amendment) against Defendants and his due process claim against Defendant Crosby be DISMISSED without prejudice under 28 U.S.C. §§ 1915A(b)(1) and1915(e)(2)(B)(ii) for Plaintiff's failure to state a claim on which relief may be granted.

2.    That the clerk be directed to terminate Captain McCabe as a defendant in this action.

---

[7] The Fourth Amendment provides: "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.

3.    That this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 5th day of March, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.