UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PLEADRO JERMAINE SCOTT,

    Plaintiff,

v.                                                            Case No. 3:19cv4746-LC-HTC

C. CROSBY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Crosby and King's motion for summary judgment (ECF Doc. 84). The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon consideration of the motion, evidence, and Plaintiff's opposition (ECF Doc. 100), the undersigned recommends the motion be GRANTED.

**I.  BACKGROUND**

Plaintiff Pleadro Jermaine Scott is an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at South Florida Reception Center ("SFRC"). In the amended complaint (ECF Doc. 11), Plaintiff names six (6) current or former employees of Century Correctional Institution ("CCI"): Captain Jeremiah McCabe, Sergeant Chase Crosby, Officer Cody King, and three (3) John Doe

officers, two of whom Plaintiff subsequently identified as Officers Victor Mitchell and Joseph Wall.[1]

On March 26, 2020, the District Judge adopted the undersigned's report and recommendation (ECF Doc. 12), dismissing McCabe and allowing service of only Plaintiff's excessive force and retaliation claims on the remaining Defendants. ECF Doc. 16. Both claims arise out of a single subject incident, which was captured on video (ECF Doc. 112). In Plaintiff's sworn amended complaint and response, he alleges the following events transpired on the day of the subject use-of-force incident, April 12, 2019.[2]

While at CCI, Plaintiff filed "a grievance about illicit activity that was being conducted by CCI staff." ECF Doc. 11 at 8. "Later that morning," Crosby and Wall escorted Plaintiff to a new dorm. *Id.* King and Mitchell then joined in the escort when Plaintiff "verbally attempted to notify" the officers "that he feared for his safety." *Id.*; ECF Doc. 100 at 2–3. "Plaintiff was not allowed to elaborate on the subject," and Crosby told him he was "going to fear for his safety because he's going to go in that cell." ECF Doc. 11 at 8. When he arrived at the "cell front," Plaintiff "shouted out loud for the audio and video" his name and that he "fear[ed] for his

---

[1] Defendant Wall waived service in November 2020, and Defendant Mitchell was served in January 2021. Wall and Mitchell filed their answer to Plaintiff's amended complaint on January 28, 2021.

[2] To assist the reader, spelling or grammatical errors have been revised in the quoted language.

Case No. 3:19cv4746-LC-HTC

safety and [was] requesting protective management." *Id.* Crosby, King, and the other officers "ignored Plaintiff's request for protective management and refused to allow Plaintiff to elaborate any further on the subject." *Id.* at 9.

"Without warning," Plaintiff was "physically assaulted . . . while Plaintiff was not combative, not a threat, not disorderly, not resisting, and having not violated any rules." ECF Doc. 11 at 9. Crosby, King, and the other officers threw "Plaintiff to the floor while he remained in handcuffs causing his body, head, face to hit the floor with significant impact." *Id.* While he was on the floor, "Plaintiff was punched in the face by at least one officer, and either punched or elbowed applied with the body weight of other officers to Plaintiff torso." *Id.* "Plaintiff was also sprayed with chemical agent," *id.*, and King placed leg restraints on Plaintiff "excessively tight" despite Plaintiff's complaints, "affecting Plaintiff's blood circulation and ability to walk." ECF Doc. 100 at 20.

These actions were allegedly carried out with "malicious and sadistic intent to cause harm and/or mayhem and deter Plaintiff from requesting protection and filing grievance pursuing pending civil litigation." ECF Doc. 11 at 9. Plaintiff claims he sustained multiple injuries from the incident, including "malaise, body sores, pain, burning, tearing and involuntary closing of the eyes, nasal discharge, sneezing disorientation and the sensation of respiratory distress and skin irritation,

bruising and abrasion to his knees, chipped and/or broken teeth, mental and emotional distress, physical fright." *Id.* at 9–10.

## II. SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, a defendant must show that the plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if a reasonable jury could return a verdict in favor of the non-moving party. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). The courts liberally construe the filings of *pro se* litigants. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). However, "a *pro se* litigant does not escape the essential burden under summary judgment

standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## III. DISCUSSION

Defendants move for summary judgment on Plaintiff's Eighth Amendment excessive force claim on the grounds that the use of force was reasonable, necessary and not excessive. ECF Doc. 84 at 9. Additionally, Defendants argue they are entitled to qualified immunity, and they assert Plaintiff has not made a showing of retaliation under the First Amendment. *Id.* at 13–14. In support of Defendants' motion, they rely on Declarations from the Defendants, use-of-force reports, and incident reports. ECF Doc. 84-1 to 84-10.

Plaintiff submitted a response to Defendants' motion, arguing the video evidence submitted under seal by Defendants shows there was no justification for the use of force because Plaintiff was following FDOC policy, and Defendants retaliated against him by using excessive force in response to Plaintiff's statement that he feared for his life. ECF Doc. 100. Thus, Plaintiff sought to have the Defendants submit the video evidence under seal for the Court's review. ECF Doc. 98. The Court granted Plaintiff's request and has reviewed the video. ECF Doc. 106.

The Court finds, however, that the video evidence contradicts Plaintiff's version of events such that no reasonable jury could find that Defendants used excessive force on Plaintiff. Second, Plaintiff has failed to show retaliation, as the subject incident did not deter a person of ordinary firmness from engaging in protected conduct.[3]

### A.   The Fixed-Wing Video

The fixed-wing video (ECF Doc. 112, Exhibit A, "Scott UofF-Shower.avr") begins by showing Mitchell and King waiting near an open cell door. (16:50:01).[4] Plaintiff is seen carrying a bag around his neck and being escorted by Wall and Crosby to a cell door. (16:50:36). Plaintiff lowers his neck so that the bag rests on the floor, then Mitchell picks up the bag and places it in the open cell while Plaintiff stands against the wall. (16:50:44). After Mitchell places the bag in the cell, Wall and Crosby move Plaintiff towards the cell door, and King follows from behind. (16:50:57).

Plaintiff looks inside the cell and begins yelling indecipherable words. (16:51:06). He then yells, "My name is Pleadro Scott; I fear for my safety," multiple times over the span of thirty (30) seconds, as Crosby, Wall, and Mitchell stand near him, and King stands a few feet behind them. (16:51:01–16:51:32). Without

---

[3] Because the undersigned recommends granting Defendants' motion on these two grounds, the undersigned does not address Defendants' qualified immunity argument.
[4] The parentheticals note the time elapsed on the video and not the time of day of the events.

applying any force, Crosby, Wall, and Mitchell exchange some words with Plaintiff during these thirty seconds; however, it is not clear what is being said.

Wall and Crosby then take Plaintiff by his arms and attempt to move him into the cell. (16:51:34). Plaintiff can be seen forcibly resisting Wall and Crosby's attempts to get him to go into the cell by pushing back and lunging forward and backward with his body. (16:51:36). Despite both Wall and Crosby securing Plaintiff's arms, Plaintiff continues to resist. *Id.* Plaintiff can then be seen turning his head toward Crosby as if to confront him. (16:51:42). Crosby then grabs Plaintiff's arm and moves him to the ground. *Id*. Crosby secures Plaintiff's upper body while he is on the ground, and Mitchell secures Plaintiff's torso area. (16:51:44). King remains in the background, and Wall positions himself near Plaintiff's head. *Id*.

While on the ground, Plaintiff can be seen kicking his legs as King attempts to secure them in leg restraints. (16:51:48). Wall then unholsters his chemical agent, he but does not immediately use it. (16:51:50). For a few seconds, Plaintiff ceases resisting. (16:51:52). Plaintiff then begins to yell and can be seen kicking his legs once again. (16:51:59). At that point, King uses his hand and knee to restrain Plaintiff's legs, and Wall discharges a chemical agent in Plaintiff's face. (16:52:07). Wall and Crosby, both appearing to have been affected by the chemical agent, then get up and walk away from Plaintiff, as Mitchell and King maintain their custodial

holds. (16:52:10). At this point, Plaintiff ceases resisting, and no additional force is applied other than Mitchell and King's custodial holds. (16:52:15).

The officers then pick up Plaintiff and immediately escort him to the decontamination shower. (16:53:07). After Plaintiff finishes his decontamination shower, King places leg restraints on Plaintiff, causing Plaintiff to complain about the leg restraints being too tight. (ECF Doc. 112, Exhibit B, "VTS_01_1"). The officers then escort Plaintiff to an isolated room for an examination before taking him back to his cell. *Id.*

### B.     Excessive Force

The Eighth Amendment to the U.S. Constitution prohibits the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The "core judicial inquiry" in considering an Eighth Amendment excessive force claim, therefore, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010). To determine whether an officer applied the force maliciously and sadistically, courts consider the following factors: "(1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat 'reasonably perceived by the responsible officials,' . . . (4) 'any efforts made to temper the severity of a forceful response,'"

and "(5) [t]he absence of serious injury." *Hudson*, 503 U.S. at 1, 7 (citing *Whitley v. Albers*, 475 U.S. 312, 312, (1986)).

Despite Plaintiff's assertions to the contrary, the fixed-wing video evidence "blatantly contradict[s]" Plaintiff's version of events. *See Jones v. City of Cincinnati*, 736 F.3d 688, 692 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380–82 (2007)). Namely, contrary to Plaintiff's allegations that he was physically assaulted without warning and that he was not combative or resisting, as discussed above, the video shows Plaintiff refusing to enter the cell, pushing back on officers, and then continuing to resist even after he is placed on the ground. Thus, the Court must "view[ ] the facts in the light depicted by the videotape" and cannot adopt the version of the facts offered by Plaintiff. *See Jones*, 736 F.3d at 692; *Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Considering the video evidence and application of the *Hudson* factors, Plaintiff cannot establish that the force used against him was either excessive or applied maliciously or sadistically, as necessary to establish an Eighth Amendment claim. First, the undersigned finds there was a need for Defendants to use force in

the subject incident, as Plaintiff was not complying with their commands.[5]  *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance.").  As discussed above, the video shows Plaintiff physically resisting going into the cell.  Moreover, the fact that Plaintiff was handcuffed at the time does not render the use of force unconstitutional.  *See Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018) (finding lack of evidence to establish excessive force claim at summary judgment stage even though evidence showed inmate was in leg restraints and handcuffs at the time of the force).  Plaintiff was disobeying Defendants' orders and physically resisting their attempts to restrain him.

Second, the need was proportional to the force used.  Crosby attempted to bring Plaintiff into compliance by grabbing his arm and wrist before resorting to pushing Plaintiff to the ground.  Even construing the latter as a "takedown," the force was proportional in response to Plaintiff's resistance to the officers' commands.  "The use of a takedown 'is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.'"  *See Miles*, 757 F. App'x at 830 (quoting *Danley*

---

[5] To the extent Plaintiff contends he was not required to obey Defendants' orders because they violated FDOC policy and were thus unlawful, ECF Doc. 100 at 16, his argument is unavailing. Even assuming the Defendants' attempt to place Plaintiff in the cell with another inmate on disciplinary confinement violated FDOC policy, the Defendants' order to go in the cell was not unlawful.  In the deliberate indifference context, the Eleventh Circuit has held that it is reasonable for officers to place a prisoner in a cell with an inmate who the prisoner claims could harm him so that officers can conduct an investigation.  *See Mosely v. Zachery*, 966 F.3d 1265 (11th Cir. 2020).

*v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008)), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)). Indeed, even after he was taken to the ground, Plaintiff can be seen continuing to resist the officers' holds.

The video also shows King had no role in the use of force other than restraining Plaintiff's legs with his hand and knee and placing leg restraints on Plaintiff, ECF Doc. 100 at 20, which is insufficient to establish a disproportional use of force, particularly because Plaintiff has not shown any injury from King's application of the restraints. *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) (concluding that force used during law enforcement officer's arrest of individual, including painful handcuffing, was not excessive when force and resulting injury were minimal); *Gold v. City of Miami*, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (holding that plaintiff's pain and skin abrasions from handcuffs reflected a minimal amount of force was used to apply the handcuffs); *Brooks v. Blevins*, No. 4:19CV288-RH-MAF, 2020 WL 4283074, at *2 (N.D. Fla. July 27, 2020) ("An allegation of tight handcuffing, without more, is insufficient to state a claim.").

Additionally, although Plaintiff alleges one of the officers punched him in the face, ECF Doc. 11 at 9, the video evidence does not indicate that such an act occurred. The Court notes that Plaintiff argues one of the officer's bodies is covering the punch on the video. However, even if one of the officers did punch Plaintiff

during the struggle to restrain him, it would not be the type of force that is "repugnant to the conscience of mankind," *Johnson v. Moody*, 206 F. App'x 880, 884–85 (11th Cir. 2006) (quoting *Hudson*, 503 U.S. at 9–10), especially considering how much Plaintiff was resisting Defendants' attempts to subdue him.  *See Black v. Butler*, No. 2:12-CV-0633-LSC-PWG, 2013 WL 6085980, at *9 (N.D. Ala. Nov. 19, 2013) ("The slap by one officer and the thump in the eye by another are *de minimus* intrusions that do not violate the Eighth Amendment."); *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1318 (S.D. Fla. 2012) (holding defendant officer's punches to the plaintiff's ribs were not excessive where the plaintiff was resisting arrest and a reasonable officer could believe the punches were necessary to coax a suspect into surrender).

Third, Defendants reasonably perceived Plaintiff's physical resistance to their commands and subsequent attempt to escape their custodial holds as a threat. Plaintiff forcibly pushed back against the officers when they attempted to move him into the cell, and Plaintiff can be seen turning toward Crosby as if to confront him right before the alleged "takedown."  *See Miles*, 757 F. App'x at 829 (internal quotations omitted) ("[The Eleventh Circuit] give[s] a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.").

Fourth, the officers made several attempts to temper the severity of a forceful response. After the officers escorted Plaintiff to his cell, they waited for more than thirty (30) seconds, without applying any force, as Plaintiff became disorderly and began to yell. When Plaintiff continued to resist the officers' instructions that he go into the cell, Crosby and Wall utilized minimal force by grabbing Plaintiff's wrists and arms and attempting to move him into the cell. Only after Plaintiff fought back and attempted to confront Crosby did Crosby resort to moving Plaintiff to the ground. And, even when Plaintiff was on the ground, the officers provided him an opportunity to cease his resistance. Only after he continued his attempts to break free did Wall use a chemical agent. Once Plaintiff ceased his insubordinate conduct, the officers immediately—within one minute—transported Plaintiff to the decontamination shower then took him to medical before returning him to the cell.

Finally, the extent of Plaintiff's alleged injuries, which include bodily reactions to pepper spray as well as "body sores, . . . bruising and abrasion to his knees, chipped and/or broken teeth, . . . [and] physical fright," ECF Doc. 11 at 9–10, do not support a finding of excessive force. *Taylor v. Taylor*, No. 5:03-CV-316(CWH), 2006 WL 1735405, at *3 (M.D. Ga. June 23, 2006) (applying the *Hudson* factors and determining that injuries including aches and chipped teeth were *de minimis*); *Harvey v. Edwards*, No. 5:03CV26CWH, 2005 WL 2007238, at *3 (M.D. Ga. Aug. 18, 2005) ("Although plaintiff did allegedly receive a chipped tooth

as a result of the defendants use of force, said injury is *de minimis* as it occurred in an attempt to subdue plaintiff.").

Thus, the undersigned finds no reasonable jury could conclude, based on the video evidence, that Defendants acted maliciously or sadistically or used excessive force such as would be necessary for Plaintiff to be entitled to relief under the Eighth Amendment. *See Scott*, 550 U.S. at 380–81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."); *Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016) (affirming grant of judgment in favor of defendant on excessive force claim where, "despite [plaintiff]'s assertions to the contrary, the video showed that [defendant] acted in an effort to maintain discipline").

C.   **Retaliation**

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citing *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989)). To prevail on a First Amendment retaliation claim, a plaintiff must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal

relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff alleges Defendants applied the force from the subject incident to "deter Plaintiff from requesting protection and filing grievance pursuing pending civil litigation." ECF Doc. 11 at 9. As to the first element of a retaliation claim, filing grievances or lawsuits clearly constitutes protected speech. *Redd v. Conway*, 160 F. App'x 858, 862 (11th Cir. 2005); *Rodriguez v. McNeal*, No. 308CV391/MCR/AK, 2009 WL 1563462, at *2 (N.D. Fla. May 28, 2009). Additionally, Plaintiff's allegations regarding his "requesting protection" and complaining about fears for his safety could be liberally construed as complaints about conditions of confinement, which are also protected speech. *Smith*, 532 F.3d at 1276 (citing *Farrow*, 320 F.3d at 1248).

Defendants argue, however, and the undersigned finds, Plaintiff's retaliation claim fails on the second element, as he has not shown the subject incident would likely deter a person of ordinary firmness from engaging in such speech. Indeed, following the allegedly retaliatory use of force, Plaintiff submitted several grievances. *See Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) (reasoning that the plaintiff "continued to file grievances against [the defendant], even after [the alleged retaliation], which illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech"); *Moss v.*

*Gradia*, 2010 WL 337603 (N.D. Fla. Jan. 21, 2010) (holding there is no adverse effect from alleged retaliation where the plaintiff filed six (6) grievances against the defendant after the alleged retaliation); *Floyd v. Sigmon*, No. 3:15CV482/MCR/CJK, 2016 WL 3713208, at *3 (N.D. Fla. June 9, 2016), *report and recommendation adopted,* No. 3:15CV482/MCR/CJK, 2016 WL 3704495 (N.D. Fla. July 12, 2016) (holding the defendant's allegedly retaliatory conduct would not "likely deter a person of ordinary firmness" where the plaintiff filed subsequent informal and formal grievances about the defendant's conduct).

### D.     Failure to Intervene

In his response in opposition, Plaintiff alleges King was "in a position to intervene throughout [the subject] incident yet failed to do so." ECF Doc. 100 at 5. Plaintiff, however, never alleged a failure to intervene claim against King in his amended complaint and cannot amend his causes of action through his response. *See, e.g.*, *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding the plaintiff could not raise a new claim in response to motion for summary judgment that was not pled in the complaint); *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1253–54 (S.D. Fla. 2008) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion for summary judgment.").

Case No. 3:19cv4746-LC-HTC

Regardless, even if Plaintiff had included the claim in his amended complaint, the undersigned finds the Defendants did not use excessive force, which precludes any claim against King for failing to intervene. *Brown v. Mastro*, No. 3:17CV691-TKW-HTC, 2020 WL 1917661, at *10 (N.D. Fla. Mar. 27, 2020), *report and recommendation adopted*, No. 3:17CV691-TKW-HTC, 2020 WL 1916688 (N.D. Fla. Apr. 20, 2020), *appeal dismissed sub nom. Brown v. Bay Cty. Commissioners*, No. 20-11950-D, 2020 WL 5049033 (11th Cir. July 2, 2020) ("[B]ecause . . . no excessive force was used, Defendants had no constitutional obligation to intervene.").

## IV. CONCLUSION

Accordingly, it is respectfully recommended:

1. Defendants Crosby and King's motion for summary judgment (ECF Doc. 84) be GRANTED.

2. Judgment be entered in favor of Crosby and King.

3. Crosby and King be terminated as defendants in this action.

Done in Pensacola, Florida, this 3rd day of February, 2021.

/s/ *Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**