UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PLEADRO JERMAINE SCOTT,

    Plaintiff,

v.                                                      Case No. 3:19cv4746-LC-HTC

C. CROSBY, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Victor Mitchell and Joseph Wall's motion for summary judgment (ECF Doc. 134). The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon consideration of the motion, evidence, and Plaintiff's responses in opposition (ECF Docs. 141, 148), the undersigned recommends the motion be GRANTED.

## I.    INTRODUCTION

Plaintiff Pleadro Jermaine Scott, an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Hardee Correctional Institution, alleges in this action that Defendants used excessive force and retaliated against him. The conduct at issue is based on a single incident occurring when Plaintiff was at Century Correctional Institution, which was captured entirely on video. Although

Plaintiff initially named five (5) officers, one was dismissed by the Court at screening (ECF Docs. 12, 16),[1] and the Court entered summary judgment in favor of two of the officers, Sgt. Chase Crosby and Officer Cody King, finding that the video evidence blatantly contradicted Plaintiff's allegations. ECF Docs. 120, 124.

Defendants Mitchell and Wall, who were initially identified as Doe defendants, were served after Crosby and King's motion for summary judgment was filed, and they answered the amended complaint just a couple of weeks before the Court dismissed Crosby and King. Because the same video evidence submitted by Crosby and King also depicts the conduct of Mitchell and Wall, the Court directed Plaintiff and Defendants Mitchell and Wall to show cause why the Court should not also enter summary judgment for Wall and Mitchell. ECF Doc. 131.

In response to the Court's show cause order, Mitchell and Wall filed a motion for summary judgment, essentially adopting and incorporating the arguments made by Crosby and King. ECF Doc. 134. Plaintiff also filed a response to the show cause order, ECF Doc. 141, as well as an opposition to Mitchell and Wall's summary judgment motion, ECF Doc. 148. The crux of Plaintiff's submissions is that (1) he needs additional discovery, (2) the video he viewed may not be the same video

---

[1] On March 26, 2020, the District Judge adopted the undersigned's report and recommendation (ECF Doc. 12), dismissing McCabe and allowing service of only Plaintiff's excessive force and retaliation claims on the remaining Defendants. ECF Doc. 16.

Defendants submitted to the Court, and (3) a reasonable jury could find in Plaintiff's favor.

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

In Plaintiff's sworn amended complaint and responses, he alleges the following events transpired on the day of the subject use-of-force incident, April 12, 2019.[2]

While at CCI, Plaintiff filed "a grievance about illicit activity that was being conducted by CCI staff." ECF Doc. 11 at 8. "Later that morning," Crosby and Wall escorted Plaintiff to a new dorm. *Id.* King and Mitchell then joined in the escort when Plaintiff "verbally attempted to notify" the officers "that he feared for his safety." *Id.*; ECF Doc. 100 at 2–3. "Plaintiff was not allowed to elaborate on the subject," and Crosby told him he was "going to fear for his safety because he's going to go in that cell." ECF Doc. 11 at 8. When he arrived at the "cell front," Plaintiff "shouted out loud for the audio and video" his name and that he "fear[ed] for his safety and [was] requesting protective management." *Id.* Crosby, King, and the other officers "ignored Plaintiff's request for protective management and refused to allow Plaintiff to elaborate any further on the subject." *Id.* at 9.

"Without warning," Plaintiff was "physically assaulted . . . while Plaintiff was not combative, not a threat, not disorderly, not resisting, and having not violated any

---

[2] To assist the reader, spelling or grammatical errors have been revised in the quoted language.

rules." ECF Doc. 11 at 9. Crosby, King, and the other officers threw "Plaintiff to the floor while he remained in handcuffs causing his body, head, [and] face to hit the floor with significant impact." *Id.* While he was on the floor, "Plaintiff was punched in the face by at least one officer, and either punched or elbowed . . . with the body weight of other officers [applied] to Plaintiff torso." *Id.* "Plaintiff was also sprayed with chemical agent," *id.*, and King placed leg restraints on Plaintiff "excessively tight[ly]" despite Plaintiff's complaints, "affecting Plaintiff's blood circulation and ability to walk." ECF Doc. 100 at 20.

These actions were allegedly carried out with "malicious and sadistic intent to cause harm and/or mayhem and deter Plaintiff from requesting protection and filing grievance pursuing pending civil litigation." ECF Doc. 11 at 9. Plaintiff claims he sustained multiple injuries from the incident, including "malaise, body sores, pain, burning, tearing and involuntary closing of the eyes, nasal discharge, sneezing disorientation and the sensation of respiratory distress and skin irritation, bruising and abrasion to his knees, chipped and/or broken teeth, mental and emotional distress, physical fright." *Id.* at 9–10.

## III.   SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, a defendant must show that the plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986). If a defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if a reasonable jury could return a verdict in favor of the non-moving party. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). The courts liberally construe the filings of *pro se* litigants. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). However, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## IV.   DISCUSSION

As stated above, Defendants Mitchell and Wall have moved for judgment on the same grounds as previously asserted by Defendants Crosby and King, which the

Court found to be dispositive.[3]   Namely, the video evidence contradicts any allegations that Defendants used excessive force or retaliated against Plaintiff. Plaintiff has not presented any evidence or legal argument to the Court that would warrant the Court reaching a different result as to Mitchell and Wall.   Instead, Plaintiff appears to be grasping at straws by arguing for additional discovery and questioning the authenticity of the video evidence.

### A.     The Fixed-Wing Video

The fixed-wing video (ECF Doc. 112, Exhibit A, "Scott UofF-Shower.avr") begins by showing Mitchell and King waiting near an open cell door.  (16:50:01).[4] Plaintiff is seen carrying a bag around his neck and being escorted by Wall and Crosby to a cell door.  (16:50:36).  Plaintiff lowers his neck so that the bag rests on the floor, then Mitchell picks up the bag and places it in the open cell while Plaintiff stands against the wall.  (16:50:44).  After Mitchell places the bag in the cell, Wall and Crosby move Plaintiff towards the cell door, and King follows from behind. (16:50:57).

Plaintiff looks inside the cell and begins yelling indecipherable words. (16:51:06).  He then yells, "My name is Pleadro Scott; I fear for my safety," multiple

---

[3] Like Crosby and King, Defendants also argue they are entitled to qualified immunity.  ECF Doc. 84 at 13–14.  Because the undersigned finds the video evidence is dispositive, the undersigned finds it unnecessary to address the qualified immunity argument.
[4] The parentheticals note the time elapsed on the video and not the time of day of the events.

times over the span of thirty (30) seconds, as Crosby, Wall, and Mitchell stand near him, and King stands a few feet behind them.  (16:51:01–16:51:32).  Without applying any force, Crosby, Wall, and Mitchell exchange some words with Plaintiff during these thirty (30) seconds; however, it is not clear what is being said.

Wall and Crosby then take Plaintiff by his arms and attempt to move him into the cell.  (16:51:34).  Plaintiff can be seen forcibly resisting Wall and Crosby's attempts to get him to go into the cell by pushing back and lunging forward and backward with his body.  (16:51:36).  Despite both Wall and Crosby securing Plaintiff's arms, Plaintiff continues to resist.  Id.  Plaintiff can then be seen turning his head toward Crosby as if to confront him.  (16:51:42).  Crosby then grabs Plaintiff's arm and moves him to the ground.  Id.  Crosby secures Plaintiff's upper body while he is on the ground, and Mitchell then uses his body to secure Plaintiff's torso area.  (16:51:44).  King remains in the background, and Wall positions himself near Plaintiff's head.  Id.

While on the ground, Plaintiff can be seen kicking his legs as King attempts to secure them in leg restraints.  (16:51:48).  Wall then unholsters a chemical agent, but he does not immediately use it.  (16:51:50).  For a few seconds, Plaintiff ceases resisting.  (16:51:52).  Plaintiff then begins to yell and can be seen kicking his legs once again.  (16:51:59).  At that point, King uses his hand and knee to restrain Plaintiff's legs, and Wall discharges a chemical agent in Plaintiff's face.  (16:52:01).

Wall and Crosby, both appearing to have been affected by the chemical agent, then get up and walk away from Plaintiff, as Mitchell and King maintain their custodial holds. (16:52:06). At this point, Plaintiff ceases resisting, and no additional force is applied other than Mitchell's and King's custodial holds. (16:52:15).

The officers then pick up Plaintiff and immediately escort him to the decontamination shower. (16:53:07). After Plaintiff finishes his decontamination shower, King places leg restraints on Plaintiff, causing Plaintiff to complain about the leg restraints being too tight. ECF Doc. 112, Exhibit B, "VTS_01_1". The officers then escort Plaintiff to an isolated room for an examination before taking him back to his cell. *Id.*

### B.    Excessive Force

The Eighth Amendment to the U.S. Constitution prohibits the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The "core judicial inquiry" in considering an Eighth Amendment excessive force claim, therefore, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 38–39 (2010). To determine whether an officer applied the force maliciously and sadistically, courts consider the following factors: "(1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat 'reasonably perceived by the responsible

officials,' . . . (4) 'any efforts made to temper the severity of a forceful response,'"

and "(5) [t]he absence of serious injury." *Hudson*, 503 U.S. at 1, 7 (citing *Whitley*

*v. Albers*, 475 U.S. 312, 312, (1986)).

Despite Plaintiff's assertions to the contrary, the fixed-wing video evidence

"blatantly contradict[s]" Plaintiff's version of events. *See Jones v. City of*

*Cincinnati*, 736 F.3d 688, 692 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372,

380–82 (2007)). Namely, contrary to Plaintiff's allegations that he was physically

assaulted without warning and that he was not combative or resisting, as discussed

above, the video shows Plaintiff refusing to enter the cell, pushing back on officers,

and then continuing to resist even after he is placed on the ground. Thus, the Court

must "view[ ] the facts in the light depicted by the videotape" and cannot adopt the

version of the facts offered by Plaintiff. *See Jones*, 736 F.3d at 692; *Scott*, 550 U.S.

at 380 ("When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary

judgment.").

Considering the video evidence and application of the *Hudson* factors,

Plaintiff cannot establish that the force used against him was either excessive or

applied maliciously or sadistically, as necessary to establish an Eighth Amendment

claim. First, the undersigned finds there was a need for Defendants to use force in

the subject incident, as Plaintiff was not complying with their commands. *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance."). As discussed above, the video shows Plaintiff physically resisting going into the cell, and Plaintiff continued to kick and resist after the officers moved Plaintiff to the ground. Thus, contrary to Plaintiff's argument, what Plaintiff exhibited was more than just "mere verbal abuse" toward the officers. *See* ECF Doc. 148 at 4.

Also, the fact that Plaintiff was handcuffed at the time does not render the use of force unnecessary. *See Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018) (finding lack of evidence to establish excessive force claim at summary judgment stage even though evidence showed inmate was in leg restraints and handcuffs at the time of the force).

Second, the need was proportional to the force used, and the officers' perceived threat was reasonable. As depicted in the video, the only "force" Mitchell exerted on Plaintiff was to use his body to restrain Plaintiff's torso. The video shows Mitchell placing his weight on Plaintiff while Plaintiff is still resisting. There is nothing about the position of Mitchell's body that could be considered excessive force. *See Smith v. Wester*, No. 5:18-CV-192-TKW-HTC, 2020 WL 1678960, at *8 (N.D. Fla. Mar. 12, 2020), *report and recommendation adopted*, No. 5:18CV192-

TKW-HTC, 2020 WL 1678078 (N.D. Fla. Apr. 6, 2020) ("[R]estraining [an inmate] with body weight . . . and . . . spraying 3 one-second spurts of chemical agent into a cell after giving an inmate a final order are 'not of a sort repugnant to the conscience of mankind.'"); *Palmer v. Johnson*, 2012 WL 380112, at \*10 (M.D. Fla. Feb. 6, 2012) (finding that Defendant's application of pressure to Plaintiff's leg, where Defendant was assisting another officer in restraining Plaintiff on the ground, did not amount to excessive force).  Indeed, in his responses in opposition, Plaintiff does not even allege Mitchell used any force, much less excessive force.

The only force Wall used was spraying Plaintiff with pepper spray.[5]  "Pepper spray is an accepted non-lethal means of controlling unruly inmates . . . ." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).  As the video shows, Wall unholstered the pepper spray, waited, and only used it because Plaintiff continued to resist officers.  Wall's use of pepper spray was proportional to the officers' need to regain control of Plaintiff.

Additionally, the amount of pepper used by Wall—which was approximately a five-second burst—shows an absence of sadistic or malicious intent.  *See* ECF Doc. 112, Exhibit A, "Scott UofF-Shower.avr," at 16:52:01–16:52:06.  "A short burst of

---

[5] In his declaration, Wall refers to the relevant chemical agent as "OC [Oleoresin Capsicum] Spray," which is also known as pepper spray.  *See* https://www.ojp.gov/pdffiles1/nij/grants/181655.pdf.

pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Danley*, 540 F.3d at 1307.  A "short" burst is around five seconds or less.  *See id.* (collecting cases).  Further, in his Declaration, Wall notes that he used only 69.5 grams of pepper spray, which Plaintiff does not dispute, and courts have found—in cases where a higher amount of pepper spray was used—that the force was not excessive.  *Cole v. Stewart*, 2014 WL 12783865, at *2 (M.D. Fla. July 7, 2014) (78 grams); *Readon v. Kilgo*, 2013 WL 6086039, at *6–7 (M.D. Fla. Nov. 19, 2013) (236 grams).

Plaintiff argues in his opposition that the use of pepper spray under these circumstances violated FDOC policy.  ECF Doc. 148 at 4.  This argument is unavailing.  First, Plaintiff cherry picks only one portion of the relevant FDOC policy.  Plaintiff cites Florida Administrative Code, section 33-602.210(5)(b)(1), which provides that "[d]uring emergency situations with multiple inmates in an outside area, chemical agents may be applied to quell the disturbance," and argues chemical agents should not have been used against him because his "request for protection [was] not a disturbance," and "all other inmates were locked into secure cells."  ECF Doc. 148 at 4.

Plaintiff's argument ignores the very next sentence of the policy, which provides, "In reactionary use of force situations, chemical agents are authorized for disbursal in a continuous manner until the moment the inmate(s) become(s)

compliant with lawful orders."  "Reactionary Use of Force" includes "[a]ny force that must be administered quickly or immediately to compel the cessation of an inmate's violence or resistance to a lawful order."  Fla. Adm. Code § 33-602.210(1)(x).

Wall's use of pepper spray was a reactionary use of force.  Wall administered the pepper spray quicky and immediately and for the purpose of getting Plaintiff to stop resisting.  Also, Wall ceased application of the spray once Plaintiff became compliant with the officers' orders.  Thus, contrary to Plaintiff's argument, Defendant Wall's use of pepper spray was consistent with FDOC policy, which further supports a determination that his actions were done in good faith. *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1367 (N.D. Fla. 2015) ("That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain.").

Regardless, a violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights. *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (holding that prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007) (finding

plaintiff's claim alleging defendants violated an internal jail policy insufficient to survive summary judgment).

Additionally, for the same reasons set forth in the Court's prior report and recommendation, although Plaintiff alleges in the amended complaint someone punched him in the face and elbowed him in his torso, ECF Doc. 11 at 9, no such conduct can be seen on the video. Also, even if one of the officer's bodies were in the way of the camera when such conduct occurred, as Plaintiff previously argued, such conduct is not the type of force that is "repugnant to the conscience of mankind," *Johnson v. Moody*, 206 F. App'x 880, 884–85 (11th Cir. 2006) (quoting *Hudson*, 503 U.S. at 9–10), especially considering how much Plaintiff was resisting Defendants' attempts to subdue him. *See Black v. Butler*, 2013 WL 6085980, at *9 (N.D. Ala. Nov. 19, 2013) ("The slap by one officer and the thump in the eye by another are *de minimus* intrusions that do not violate the Eighth Amendment."); *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1318 (S.D. Fla. 2012) (holding defendant officer's punches to the plaintiff's ribs were not excessive where the plaintiff was resisting arrest and a reasonable officer could believe the punches were necessary to coax a suspect into surrender).

Third, the officers reasonably perceived Plaintiff's physical resistance to their commands and subsequent attempt to escape their custodial holds as a threat. Plaintiff forcibly pushed back against the officers when they attempted to move him

into the cell, and once Plaintiff was on the ground, he continued to resist the officers' commands and attempt to break free of their custodial holds.  *See Miles*, 757 F. App'x at 829 (internal quotations omitted) ("[The Eleventh Circuit] give[s] a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.").

Fourth, the officers made several attempts to temper the severity of a forceful response.  After the officers escorted Plaintiff to his cell, they waited for more than thirty (30) seconds, without applying any force, as Plaintiff became disorderly and began to yell.  When Plaintiff continued to resist the officers' instructions that he go into the cell, Crosby and Wall utilized minimal force by grabbing Plaintiff's wrists and arms and attempting to move him into the cell.  Only after Plaintiff fought back and attempted to confront Crosby did Crosby resort to moving Plaintiff to the ground.  And even when Plaintiff was on the ground, the officers provided him an opportunity to cease his resistance.  Only after he continued his attempts to break free did Wall use the pepper spray.  Once Plaintiff ceased his insubordinate conduct, the officers immediately—within one minute—transported Plaintiff to the decontamination shower then took him to medical before returning him to the cell.

Finally, the extent of Plaintiff's alleged injuries,[6] which include bodily reactions to pepper spray as well as "body sores, . . . bruising and abrasion to his knees, chipped and/or broken teeth," ECF Doc. 11 at 9–10, do not support a finding of excessive force. *Taylor v. Taylor*, 2006 WL 1735405, at *3 (M.D. Ga. June 23, 2006) (applying the *Hudson* factors and determining that injuries including aches and chipped teeth were *de minimis*); *Harvey v. Edwards*, 2005 WL 2007238, at *3 (M.D. Ga. Aug. 18, 2005) ("Although plaintiff did allegedly receive a chipped tooth as a result of the defendants use of force, said injury is *de minimis* as it occurred in an attempt to subdue plaintiff.").

Further, Plaintiff's allegations that he experienced "mental and emotional distress" and "physical fright" fare no better. Although a lasting psychological injury could satisfy the injury element of the *Hudson* analysis, the record must provide some support for such allegations. For instance, in *Williams v. Harris*, the court analyzed the *Hudson* factors and found the plaintiff's allegation of psychological injuries weighed in plaintiff's favor where the record showed plaintiff had been admitted to the Crisis Stabilization Unit and attempted self-harm. *Williams v. Harris*, 2020 WL 7330641, at *6 (S.D. Ga. Dec. 10, 2020), *report and recommendation adopted*, 2021 WL 77783 (S.D. Ga. Jan. 8, 2021). Here, the record

---

[6] Plaintiff previously filed a motion to submit certain medical documents under seal "in support of his assertion of physical injury." ECF Doc. 133 at 1. The Court granted the motion, ECF Doc. 140; however, Plaintiff never filed the documents.

is devoid of any facts suggesting Plaintiff experienced lasting psychological injuries as a result of the subject incident.

Thus, as the Court found in regard to Plaintiff's claims against Crosby and King, no reasonable jury could conclude, based on the video evidence, that Defendants Mitchell or Wall acted maliciously or sadistically or used excessive force such as would be necessary for Plaintiff to be entitled to relief under the Eighth Amendment. *See Scott*, 550 U.S. at 380–81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."); *Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016) (affirming grant of judgment in favor of defendant on excessive force claim where, "despite [plaintiff]'s assertions to the contrary, the video showed that [defendant] acted in an effort to maintain discipline").

## C.    Retaliation

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citing *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989)).  To prevail on a First Amendment retaliation claim, a plaintiff must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a

person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff alleges Defendants applied the force from the subject incident to "deter Plaintiff from requesting protection and filing grievance pursuing pending civil litigation." ECF Doc. 11 at 9. As to the first element of a retaliation claim, filing grievances or lawsuits clearly constitutes protected speech. *Redd v. Conway*, 160 F. App'x 858, 862 (11th Cir. 2005); *Rodriguez v. McNeal*, No. 308CV391/MCR/AK, 2009 WL 1563462, at *2 (N.D. Fla. May 28, 2009). Additionally, Plaintiff's allegations regarding his "requesting protection" and complaining about fears for his safety could be liberally construed as complaints about conditions of confinement, which are also protected speech. *Smith*, 532 F.3d at 1276 (citing *Farrow*, 320 F.3d at 1248).

As the Court previously found, however, Plaintiff's retaliation claim fails on the second element, as he has not shown the subject incident would likely deter a person of ordinary firmness from engaging in such speech. Following the allegedly retaliatory use of force, Plaintiff submitted several grievances regarding the subject incident—where Plaintiff again complained about Defendants' alleged reaction to his request for protective management. *See Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) (reasoning that the plaintiff "continued to file grievances

against [the defendant], even after [the alleged retaliation], which illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech"); *Moss v. Gradia*, 2010 WL 337603 (N.D. Fla. Jan. 21, 2010) (holding there is no adverse effect from alleged retaliation where the plaintiff filed six (6) grievances against the defendant after the alleged retaliation); *Floyd v. Sigmon*, No. 3:15CV482/MCR/CJK, 2016 WL 3713208, at *3 (N.D. Fla. June 9, 2016), *report and recommendation adopted*, No. 3:15CV482/MCR/CJK, 2016 WL 3704495 (N.D. Fla. July 12, 2016) (holding the defendant's allegedly retaliatory conduct would not "likely deter a person of ordinary firmness" where the plaintiff filed subsequent informal and formal grievances about the defendant's conduct).

Plaintiff argues *Mitchell* is "different from the case at bar" because the plaintiff in *Mitchell* filed grievances "directly to the retaliator the subject of the grievance," whereas, here, Plaintiff filed grievances to "higher officials." ECF Doc. 141 at 5. Plaintiff's reading of *Mitchell* is exceedingly narrow. The second element of a retaliation claim is not limited to the retaliator.

Plaintiff also argues he does not have to show he was "actual[ly] chill[ed]" from engaging in protected speech. ECF Doc. 141 at 4 (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)). The Court does not disagree that such a showing is not required. However, the Court can look to Plaintiff's conduct after

the incident to determine whether an objective person would be deterred.  *See Mitchell*, 564 F. App'x at 457.

Finally, Plaintiff also fails to meet the third element of a retaliation claim: causation.  Conclusory allegations of retaliation without "some facts" that would indicate that the retaliatory act was, in fact, done in retaliation for exercising protected speech is not sufficient.  *See White v. Thompson*, 2007 WL 2324613 (S.D. Ga. 2007).  The allegations must be more than "general attacks" upon a defendant's motivations—Plaintiff must produce affirmative evidence of retaliation from which a jury could find that Plaintiff had carried his burden of proving the requisite motive. Plaintiff has provided no such evidence that the subject use-of-force incident occurred in retaliation for Plaintiff's engaging in protected speech.  To the contrary, the evidence shows Defendants Mitchell and Wall used force because Plaintiff *disobeyed lawful commands* and *continued to resist*.

Thus, Plaintiff has failed to establish a causal link between the protective speech and the alleged retaliatory conduct.  He has not shown the officers had a retaliatory motive separate and apart from their legitimate, penological basis for using force on him.  *See Moss*, 2010 WL 337603, at *7 (determining that an inmate plaintiff failed to establish a causal link for the alleged retaliatory termination of his job assignment where plaintiff violated prison regulations that authorized removal from his job assignment for such behavior); *Osterback v. Kemp*, 300 F. Supp. 2d

1238, 1240 (N.D. Fla.), *on reconsideration*, 300 F. Supp. 2d 1263 (N.D. Fla. 2003)

("[I]n light of the deference properly afforded the decisions of prison authorities on

matters of safety and proper administration of facilities, the transfer of Plaintiff . . .

was not unconstitutional.  This is so because the transfer was 'reasonably related to

legitimate penological interests' separate and apart from any purpose to retaliate."

(quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987))).

### D.    Failure to Intervene

In Plaintiff's opposition, he alleges Defendants Mitchell and Wall "had a duty

to intervene but yet [sic] failed to do so . . . ."  ECF Doc. 148 at 3.  Plaintiff, however,

never alleged a failure to intervene claim against Mitchell and Wall in his amended

complaint and cannot amend his causes of action through his response.  *See, e.g.*,

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding

the plaintiff could not raise a new claim in response to motion for summary judgment

that was not pled in the complaint); *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*,

625 F. Supp. 2d 1198, 1253–54 (S.D. Fla. 2008) ("A complaint cannot be amended

merely by raising new facts and theories in plaintiffs' opposition papers, and hence

such new allegations and claims should not be considered in resolving the motion

for summary judgment.").

Regardless, even if Plaintiff had included the claim in his amended complaint,

there was no reason for Mitchell and Wall to intervene since none of the officers

used excessive force. *Brown v. Mastro*, No. 3:17CV691-TKW-HTC, 2020 WL 1917661, at *10 (N.D. Fla. Mar. 27, 2020), *report and recommendation adopted*, No. 3:17CV691-TKW-HTC, 2020 WL 1916688 (N.D. Fla. Apr. 20, 2020), *appeal dismissed sub nom. Brown v. Bay Cty. Commissioners*, No. 20-11950-D, 2020 WL 5049033 (11th Cir. July 2, 2020) ("[B]ecause . . . no excessive force was used, Defendants had no constitutional obligation to intervene.").

Similarly, it appears Plaintiff is also attempting to amend his allegations through his opposition to raise new allegations against the officers related to the disciplinary report he received related to the incident. ECF Doc. 148 at 3. In the disciplinary report, Plaintiff was found guilty of disobeying verbal orders and sentenced to thirty (30) days confinement. Plaintiff filed several grievances, resulting in a determination the report should be vacated on procedural grounds. Plaintiff claims the Defendants "supplemented the disciplinary teams punishment and sentence with the unnecessary wanton infliction of harm and/or pain psychological torture." *Id.* As stated above, however, Plaintiff cannot raise new claims through a response.

### E.    Plaintiff's Complaints Regarding Discovery and the Fixed-Wing Video

In his responses, Plaintiff makes several unsubstantiated claims relating to various matters that are red herrings and have no bearing on this Court's findings. Given the speciousness of many of Plaintiff's arguments, the Court will not attempt

to address each of them. Instead, the Court will focus on what appears to be Plaintiff's two primary complaints.

First, Plaintiff suggests the Court may not have received and viewed the same fixed-wing video footage of the subject incident that Defendants showed to Plaintiff, and he "questions the video as described" in the undersigned's report and recommendation on Defendants Crosby and King's motion for summary judgment. ECF Doc. 148 at 11. Plaintiff argues an *in camera* proceeding is thus necessary to "establish that the produced recording is in fact what the proponet [sic] (the Plaintiff) of the instrument/recording claims it to be or requested." *Id.* at 1. Plaintiff further contends such a proceeding is necessary to determine whether "the recording has been altered or modified from its original version[, and] discrepancies or disputes [sic] about the contents of the recording create a triable question." *Id.* at 1–2.

In response to Plaintiff's allegation, the Court ordered Defendants to confirm (1) that the video footage Defendants submitted to the Court, *see* ECF Docs. 106, 112, is the same video footage that was shown to Plaintiff during discovery, and (2) that no other video footage of the incident exists that was shown to Plaintiff but was not provided to the Court, which they did. ECF Docs. 152, 153. Even without Defendants' confirmation, Plaintiff's allegations are wholly without support. Plaintiff points to no evidence to suggest that the video evidence viewed by the Court was altered.

Second, Plaintiff contends additional discovery is necessary for the Court to rule on Mitchell and Wall's summary judgment motion. Even accepting Plaintiff's responses as an affidavit under Federal Rule of Civil Procedure 56(d), Plaintiff fails to provide "specified reasons" as to why he needs the discovery, what exactly he needs, or why he cannot otherwise respond to the motion for summary judgment. Plaintiff does not explain what any additional discovery would reveal that the parties and the Court do not already know. He does not explain why the discovery provided by Crosby and King, who had to defend against the exact same claims, is insufficient.

Additionally, many of Plaintiff's arguments and requests for extended discovery are repetitive, absurd, or improper. For instance, Plaintiff contends a psychologist is "necessary to establish the extent and duration of Plaintiff['s] injury," ECF Doc. 141 at 6, but Plaintiff filed a separate motion requesting the same, which was denied by this Court. *See* ECF Docs. 138, 143. Plaintiff also suggests his "identity is at issue" based on the fixed-wing video footage and requests his FDOC face sheet "to ensure that this Plaintiff is the same individual depicted in the video produced to the Court." ECF Doc. 141 at 7–8. Such a dubious, eleventh-hour argument is belied by the record, which shows Plaintiff—on several occasions—describing the content of the video footage without any mention of his identity being at issue. *See, e.g.*, ECF Docs. 100; 122.

## V.    CONCLUSION

Accordingly, it is RESPECTFULLY RECOMMENDED:

1.    Defendants Mitchell and Wall's motion for summary judgment (ECF Doc. 134) be GRANTED.

2.    Judgment be entered in favor of Mitchell and Wall.

3.    The clerk be directed to close this case.

Done in Pensacola, Florida, this 28th day of July, 2021.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.